ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 1 4 2007
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | No. 07-875 C |

## COMPLAINT

Plaintiff Connecticut Yankee Atomic Power Company ("Connecticut Yankee"), through its undersigned counsel, files this Complaint against the Defendant, the United States of America, and states as follows:

## NATURE OF THE CASE

1. Under the Nuclear Waste Policy Act of 1982 ("NWPA"), the United States government, acting through the Department of Energy ("DOE"), in 1983 entered into a contract with Plaintiff Connecticut Yankee pursuant to which the government, in return for payment of substantial fees by Connecticut Yankee, is obligated to accept and dispose permanently of spent nuclear fuel and high-level nuclear waste (collectively, "SNF") generated by a commercial nuclear power plant owned and operated by Connecticut Yankee.

2. Even though Connecticut Yankee has paid all fees required to date, DOE has failed to perform its SNF disposal obligation, causing Connecticut Yankee to suffer significant damages.

3. Connecticut Yankee first brought a lawsuit against DOE in 1998, alleging, *inter alia*, material partial breach of the government's obligation to implement and operate a program for the permanent disposal of its SNF. *Connecticut Yankee Atomic Power Co. v. United States*, No. 98-154C (Fed. Cl.) (Merow, S.J.). The suit initially claimed more than $90,000,000.00 in past and future damages relating to the breach, and was assigned to Senior Judge James F. Merow. Connecticut Yankee's sister utilities, Maine Yankee Atomic Power Company (*Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl.) (Merow, S.J.)) also brought suit against DOE for breach of their SNF contracts, which impose similar obligations on the utilities and DOE as does the Connecticut Yankee contract. The three *Yankee* cases were eventually consolidated for trial.

4. Breach of Connecticut Yankee's contract by DOE was established by the Court, *Yankee Atomic Electric Energy Co. v. United States*, 42 Fed. Cl. 223 (1998) (Merow, S.J.), and affirmed by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336 (Fed. Cir. 2000) (hereinafter "*Maine Yankee*").

5. Subsequently, at trial on the issue of damages, Connecticut Yankee presented damages through the year 2012 based on actual and future costs to store SNF that it would not have incurred but for DOE's breach. Trial testimony, as well as post-trial briefing and proposed findings for future costs were premised on the then assumption that DOE planned to commence performance in 2010, and based in substantial part on cost projections approved by regulators for rate-base purposes.

6. Before Judge Merow issued a decision on Connecticut Yankee's claims, the Federal Circuit issued its decision in another SNF case, *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), and held that, in any suit for breach of a SNF contract, recoverable costs were limited to those actually incurred prior to the time of the trial, and damages for anticipated future nonperformance were non-recoverable in that proceeding. Following the ruling in *Indiana Michigan*, Judge Merow requested supplemental briefing to address the Federal Circuit decision. Additionally, the Court granted Connecticut Yankee's Motion to Amend its Complaint, and record evidence was limited to damages actually incurred through year end 2001; "costs asserted for periods beyond [2001] were dismissed without prejudice for their reassertion in future litigation." *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 251 (2006) (Merow, S.J.); *see also Yankee Atomic Elec. Co. v. United States*, No. 98-126C, Order dated May 5, 2006 (Fed. Cl.) (Merow, S.J.).

7. On September 30, 2006, Judge Merow, in a 103-page decision, *Yankee Atomic Elec. Co.*, 73 Fed. Cl. 249, ruled in favor of Connecticut Yankee in the amount of $34,154,879.00 broken down as follows: $8,350,893.00 for costs associated with the "reracking" of Connecticut Yankee's wet-pool storage facility, and $25,803,986.00 for costs associated with Independent Spent Fuel Storage Installation ("ISFSI") construction (dry storage). These damage figures represent actual costs incurred through December 31, 2001 only.

8. Defendant United States appealed Judge Merow's decision to the Federal Circuit, and Connecticut Yankee cross-appealed. Briefs were filed in the summer of 2007, and the parties anticipate that oral arguments will take place some time in 2008. The matter is currently pending before the Federal Circuit, and a decision has not yet been issued.

9. Connecticut Yankee has continued to comply with its fee payment obligations under the contract. DOE, however, still has not performed its reciprocal obligation to accept and dispose of SNF, and has stated that it will not do so until 2017 at the earliest.

10. In accordance with the *Indiana Michigan* Court's instruction to bring separate actions for damages as they are incurred, Connecticut Yankee now brings this lawsuit to recover significant damages, incurred during the period starting January 1, 2002 and ending at some date prior to trial, caused by DOE's material partial breach of its obligation to dispose of SNF generated by the commercial nuclear power plant owned and operated by Connecticut Yankee.

**PARTIES**

11. Plaintiff Connecticut Yankee is an electric utility company incorporated under the laws of the State of Connecticut. Connecticut Yankee's sole electricity generating facility was a nuclear power plant located in Haddam Neck, Connecticut. That plant was permanently shut-down and subsequently decommissioned. The ISFSI and the SNF it stores are all that presently remain at the Haddam Neck site. The ISFSI cannot be decommissioned and the requisite Nuclear Regulatory Commission license terminated until DOE performs its obligation to dispose of Connecticut Yankee's SNF.

12. Defendant is the United States of America, acting by and through the DOE.

**JURISDICTION**

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1491(a)(1).

14. DOE's failure to comply with its contractual obligation to dispose of Connecticut Yankee's SNF constitutes a material partial breach of the contract, for which Connecticut Yankee may seek recovery of its damages without exhausting any administrative remedies. The Federal Circuit has conclusively rejected DOE's exhaustion of remedies jurisdictional defense,

determined that jurisdiction is proper in this Court, and further concluded that DOE breached its obligation under the Connecticut Yankee contract. *See Maine Yankee*, 225 F.3d at 1342.

## STATEMENT OF FACTS

### The Nuclear Waste Policy Act and Connecticut Yankee's 1983 Contract

15. In 1982, Congress enacted the NWPA which created a program for the permanent disposal of SNF generated by commercial nuclear power plants. The NWPA codified the government's responsibility for the permanent disposal of SNF. The NWPA made utilities responsible for the costs of the program.

16. Consistent with the NWPA, Connecticut Yankee entered into a contract with DOE on June 30, 1983. A copy of Connecticut Yankee's contract as executed with DOE is attached as Exhibit 1. The contract requires DOE to commence performance of disposal obligations not later than January 31, 1998. The contract also requires DOE to arrange for, and provide, transportation casks and all necessary transportation of the SNF from Connecticut Yankee's site to a DOE facility. The contract permits DOE, in order to carry out its obligations under the contract, to use any appropriate facility operated by or on behalf of DOE.

17. Connecticut Yankee's contract provides that Connecticut Yankee would pay the government fees which, together with fees paid by other utilities pursuant to contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the prompt disposal of all SNF that Connecticut Yankee would be ready to deliver.

18. Connecticut Yankee's contract provides that, in return for the payment of such fees, DOE would in fact implement and operate a program for the prompt disposal of all SNF that Connecticut Yankee would be ready to deliver.

19. In accordance with the contract, Connecticut Yankee has paid DOE all of the fees required to date for disposal of its SNF.

**DOE's Breach of Its Contractual Obligation**

20. DOE did not begin to accept and dispose of SNF by January 31, 1998, as required by the NWPA and its contract with Connecticut Yankee, and has consistently extended the earliest time at which it expects to begin accepting SNF, such that it does not expect to commence disposal prior to 2017. DOE has refused to provide any firm commencement date for the disposal of Connecticut Yankee's SNF.

21. In the predecessor *Maine Yankee* case decided on August 31, 2000, the Federal Circuit concluded that DOE's admitted failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a breach of its contract with Connecticut Yankee. *Maine Yankee*, 225 F.3d at 1342.

**Connecticut Yankee's Damages**

22. As a result of DOE's actions and failure to act, Connecticut Yankee has suffered and will continue to suffer damages resulting from the additional costs to operate and maintain facilities to store its SNF until DOE meets its obligations to dispose of Connecticut Yankee's SNF, as well as other damages.

23. As a result of DOE's failure to perform its obligations to promptly dispose of Connecticut Yankee's SNF, Connecticut Yankee has incurred, for the period starting January 1, 2002 and continuing through some date prior to trial, significant additional costs associated with the extended storage of its SNF, including without limitation: ISFSI (dry storage) licensing, engineering and construction costs; costs associated with purchase, design and engineering, delivery and loading of casks at the ISFSI; ISFSI operating costs; wet pool operating costs; wet

pool decommissioning costs; and continued payment of Nuclear Regulatory Commission licensing and inspection fees and nuclear-related insurance premiums.

**COUNT I**
**(Partial Breach of Contract)**

24. Paragraphs 1 through 23 are incorporated herein by reference as if set forth in full.

25. The 1983 contract between Connecticut Yankee and DOE imposed an unconditional obligation on DOE to dispose of Connecticut Yankee's SNF promptly and to commence performance beginning in 1998, in return for Connecticut Yankee's payment of specified fees.

26. Connecticut Yankee has paid all of the fees required to date.

27. DOE has defaulted and continues to default on its contractual obligation to promptly dispose of Connecticut Yankee's SNF. All of Connecticut Yankee's contract claims in this action are solely for damages arising from the government's failure of performance, which constitutes a material partial breach of contract. Connecticut Yankee insists that the government eventually meet its obligation to dispose of Connecticut Yankee's SNF, and, should the government fail to do so, Connecticut Yankee reserves all rights to assert new and separate claims at that time and to seek remedies appropriate for a complete breach of the contract.

28. As a direct, proximate and substantial result of DOE's partial breach of contract, Connecticut Yankee has incurred and will continue to incur additional costs associated with its extended storage of Connecticut Yankee's SNF.

29. By reason of the foregoing, the government is liable to Connecticut Yankee for damages for partial breach of contract.

**COUNT II**
**(Breach of the Implied Duty of Good Faith and Fair Dealing)**

30. Paragraphs 1 through 29 are incorporated herein by reference as if set forth in full.

31. The 1983 contract between Connecticut Yankee and DOE imposed upon DOE an implied duty of good faith and fair dealing.

32. The implied duty of good faith and fair dealing required DOE to cooperate with Connecticut Yankee and to reasonably perform its duties under the contract.

33. DOE breached its duty of good faith and fair dealing by failing and refusing to dispose of Connecticut Yankee's SNF, by failing and refusing to take appropriate steps to ensure that DOE would be able to dispose of Connecticut Yankee's SNF, and by otherwise failing to perform its duties under the contract.

34. As a direct, proximate and substantial result of DOE's breaches of its duty of good faith and fair dealing, Connecticut Yankee has incurred and will continue to incur additional costs associated with its extended storage of Connecticut Yankee's SNF.

35. By reason of the foregoing, the government is liable to Connecticut Yankee for damages for breach of the implied duty of good faith and fair dealing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Connecticut Yankee Atomic Power Company demands judgment against the United States:

On Count I, for significant damages, in an amount to be determined at trial;

On Count II, for significant damages, in an amount to be determined at trial;

On all Counts, for interest and for such costs, expenses and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Dated: December 13, 2007

Respectfully submitted,

Timothy Heffernan
Watt, Tieder, Hoffar & Fitzgerald, L.L.P
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
(703) 749-1000
(703) 893-8029 (fax)

Counsel of Record for Plaintiff Connecticut Yankee Atomic Power Company

Of Counsel:

William Kayatta, Jr.
Jared des Rosiers
Michael Wilson
Lucus Ritchie
Pierce Atwood LLP
One Monument Square
Portland, ME 04101
(207) 791-1100
(207) 791-1350 (fax)