IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-875C<br>(Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO STAY

Pursuant to Rule 7(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court stay all proceedings in this matter, including, but not limited to, defendant's obligations to respond to the complaint, until resolution of the appeal in Yankee Atomic Electric Co. v. United States, No. 07-5025 (Fed. Cir.) ("Yankee I"), Sacramento Municipal Utility District v. United States, No. 07-5052 (Fed. Cir.) ("SMUD"), Pacific Gas & Electric Co. v. United States, Nos. 07-5046 (Fed. Cir.) ("PG&E"), and Nebraska Public Power District v. United States, No. 2007-5083 (Fed. Cir.) ("NPPD"). Significant issues that are raised by the plaintiff in this case ("Yankee II") are being addressed in these other appeals, and it would be inefficient to allow matters to proceed in this case while those same issues are being resolved by the United States Court of Appeals for the Federal Circuit.

We have consulted with counsel for plaintiff, William J. Kayatta, Jr., regarding this matter, but have not yet heard plaintiff's final position. Nevertheless, in prior discussions, counsel expressed a concern that, if the case is stayed, the plaintiff will not know with certainty what affirmative defenses and/or counterclaims the United States may file in this particular case once an answer becomes due. We do not believe this concern to be warranted. Our defenses will be governed by the decisions that the Federal Circuit, in its decision in the pending appeals

before that Court. As we discussed in the briefing before this Court in Yankee I, the Government previously raised a request for an offset, through affirmative defenses and counterclaims, against any damages award to Connecticut Yankee Atomic Power Company ("CYA") and Maine Yankee Atomic Power Company ("MYA") to account for fees that CYA and MYA have not yet paid under the Standard Contract. Further, we have expressed a desire to raise a defense based upon the "Unavoidable Delays" clause in the Standard Contract, but are currently barred from doing so pursuant to a writ of mandamus issued by the United States Court of Appeals for the District of Columbia Circuit. The viability of those defenses and counterclaims are currently before the Federal Circuit, and, because we have not identified any other affirmative defenses that we would be required to plead under the Rules of this Court, the Federal Circuit's guidance may resolve the necessity of raising them. The Federal Circuit's decisions will guide the defenses we may raise. As we discuss below, a stay of proceedings pending the finality of the appeals identified above is appropriate here.

## BACKGROUND

This case is one of a number of cases that have been filed in this Court regarding the Government's delay in beginning acceptance of spent nuclear fuel ("SNF") pursuant to the Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). The Standard Contract that was signed by all the SNF plaintiffs are essentially identical, raising the same issues relating to the rate and schedule of acceptance in each case. Most of the SNF plaintiffs are seeking damages for their additional costs of storing SNF because of the failure by the Department of Energy ("DOE") to begin acceptance pursuant to the Standard Contract.

In July and August 2004, the trial court conducted a seven-and-a-half-week trial in Yankee I, which involved the claims of the plaintiffs in three different cases: Yankee Atomic Electric Company ("YA"), CYA, and MYA. On September 30, 2006, the Court issued an opinion awarding damages to YA and CYA through the end of 2001 and to MY through the end of 2002. The Court subsequently denied our motion for reconsideration. The damage awards included costs related to the construction and loading of on-site dry waste storage facilities at YA, CYA, and MYA, including costs associated with DOE's failure to accept the plaintiffs' Greater-Than-Class-C ("GTCC") waste, and the Court's decision precluded the Government from offsetting fees that CYA and MYA have not yet paid under their contracts from the damages awards.

The Court's opinion in Yankee I did not reach two issues of great significance to future spent nuclear fuel litigation, including this case. First, despite our requests that it do so, the Court deemed it unnecessary to identify the minimum rate of acceptance of spent fuel that the Standard Contract requires. In addition, we did not raise (and could not raise because of a writ of mandamus issued by the United States Court of Appeals for the District of Columbia Circuit) as a potential defense to plaintiff's claims the applicability of the "Unavoidable Delays" clause of the Standard Contract. This clause, by its terms, excuses the Government from liability for delayed performance based upon the circumstances beyond its control identified in that clause.

The United States appealed the Court's final judgment to the United States Court of Appeals for the Federal Circuit, and YA, CYA, and MYA filed a cross-appeal. Those appeals are fully briefed, and the Federal Circuit conducted oral argument in those appeals, as well as in the related appeals of Pacific Gas and Sacramento Municipal, on February 4, 2008. The issues

in the Yankee I appeal include the manner in which the trial court should be required to evaluate whether claimed damages were caused by the Department of Energy's delay in accepting spent nuclear fuel, and the parties' briefs in both the Yankee I appeal and the related Pacific Gas appeal specifically contrasted the fundamentally conflicting causation analyses applied by the trial court in Yankee I, in Sacramento Municipal, and in Pacific Gas. In addition, the Yankee I and Pacific Gas appeals raise the issue of whether DOE is obligated to accept GTCC waste pursuant to the Standard Contract. Finally, the Yankee I appeal raises the additional issues of whether the Government should be entitled to offset from any damages award the fees that CYA and MYA have not yet paid and, further, whether this Court was obligated to retain jurisdiction of the Yankee I case pursuant to RCFC 54(b) after entering a damages award to YA and CYA through 2001 and to MYA through 2002.

In addition, the interlocutory appeal in Nebraska Public Power is also pending before the Federal Circuit. In Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 674 (2006), appeal pending, No. 2007-5083 (Fed. Cir.), this Court ruled that the writ of mandamus preventing the Government from relying upon the "Unavoidable Delays" clause of the Standard Contract was void ab initio because the court that issued it, the United States Court of Appeals for the District of Columbia Circuit, lacked jurisdiction to do so and because the Government had not waived its sovereign immunity relating to the matter identified in the writ. The Federal Circuit granted the plaintiff's petition in Nebraska for permission to appeal that interlocutory decision, the briefing in that case has been completed, and oral argument was held on December 3, 2007.

On December 14, 2007, during the pendency of the Yankee I appeal and the other appeals discussed above, YA, CYA, and MYA filed new complaints in this Court on December 14, 2007, seeking damages incurred after 2001 or, in the case of MYA, after 2002 arising from DOE's delay in beginning the acceptance of spent nuclear fuel under the same Standard Contracts that were at issue in Yankee I. Proceeding in this case at this time would likely waste both judicial and the parties' resources unnecessarily. The Yankee I, Pacific Gas, and Sacramento Municipal appeals are expected to resolve (or, at a minimum, address critical questions related to) the following issues implicated by the complaint in the Yankee II complaints: (1) the rate of acceptance of spent fuel required by the Standard Contract and the necessity of resolving that issue in evaluating damages claims; (2) the allocation of the burden, in an expectation damages case, to establish a world in which there would be performance and whether the "substantial causal factor" test obviates the need to establish such a world; (3) whether DOE is obligated to accept GTCC waste under the Standard Contract; and (4) with regard to CYA and MYA, whether the Government may offset their unpaid fees against any damages awards to them.

## ARGUMENT

### I. THE COURT SHOULD STAY THIS CASE PENDING FINAL RESOLUTION BY THE FEDERAL CIRCUIT OF ISSUES DIRECTLY RELEVANT TO THIS CASE

#### A. The Standard For Considering A Stay

This Court has the inherent power to stay proceedings, and may do so with the "exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 255 (1936). The Court applies a three-part test in deciding a motion to stay one proceeding pending the resolution of a separate proceeding. A stay is proper

if: (1) the cases involve "substantially similar" or "related issues"; (2) the requesting party will suffer hardship or inequity if required to go forward; and (3) the requested stay is not of immoderate duration. C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255). The circumstances presented by this case readily satisfy each of the criteria and, therefore, merit the entry of a stay during the pendency of the appeals in Yankee I, Pacific Gas, Sacramento Municipal, and NPPD.

B. A Stay Is Appropriate At This Time

1. This Matter Is Closely Related To The Existing And Potential Appeals To The Federal Circuit

There can be no serious dispute that the appeals to the Federal Circuit pending which we seek to stay this case, particularly those in Yankee I, are closely related to Yankee II. As an initial matter, the appeal of the Court's decision in Yankee I plainly raises many of the same issues that will necessarily arise again in Yankee II, as the parties in Yankee I and Yankee II are the same and relate to the same Standard Contracts. There is no logical reason to reach these issues in Yankee II when the identical issues are likely to be resolved by the Federal Circuit on appeal in Yankee I. The Federal Circuit's determination with respect to these issues will be binding upon this Court, and there is no reason to require the parties either to relitigate these issues anew or to proceed under a set of assumptions that may be undermined on appeal. Either scenario could result in a waste of the parties' and the Court's scare resources.

Moreover, the issues raised in the appeals already before the Federal Circuit, particularly those in Yankee I, are closely intertwined with those raised in Yankee II. As the Court is aware, the terms of all of the Standard Contracts were promulgated in the same manner through notice-and-comment rulemaking, and the interactions between DOE and the nuclear industry as a whole

led to the promulgation of the contract. As a result, any determinations about the rate of acceptance required by the Standard Contract – even if that issue were to be decided only in Pacific Gas and/or Sacramento Municipal – will be of direct significance to the course of the proceedings and the calculation of damages, if any, in Yankee II. See Restatement (Second) of Contracts § 211 (1981) (standardized contracts are to be interpreted and applied in same manner for all contract parties, regardless of individual contract holder's understanding or knowledge). Indeed, we expect that the calculation of damages in Yankee II will vary depending in part upon the identification of the minimum rate of acceptance required by the Standard Contract, an issue that we expect the Federal Circuit to address in resolving the appeal in Pacific Gas, if not Sacramento Municipal and Yankee I. Similarly, any rulings by the Federal Circuit about the availability of a defense based upon the "Unavoidable Delays" clause of the Standard Contract (as well as the contours of such a defense) will assist in determining whether (and how) such a defense can be raised in Yankee II.

Finally, the appeals are likely to resolve the issues (repeatedly raised, as the Court will recall, during the trial of Yankee I) of whether and how a plaintiff must determine a "but for" world as a means of providing a baseline against which to compare the costs incurred by plaintiff in the actual world and, ultimately, to calculate the amount of damages. The Federal Circuit's treatment of these issues will directly influence the manner in which the parties conduct discovery and present evidence in Yankee II.

2. Absent A Stay, The Government Will Incur Substantial Hardship

The situation presented in this matter amply supports a finding that the Government would suffer great hardship if our motion for a stay were to be denied.

First, fundamental fairness demands consistency in the resolution of cases with the same operative facts. See Restatement (Second) of Contracts § 211 (1981). Without a stay, there is a substantial likelihood that there will be inconsistent rulings relating to the terms of the Standard Contract, the burden of proof required by a spent nuclear fuel plaintiff seeking to establish its entitlement to damages, and the types of damage to which such a plaintiff is entitled. At a minimum, there is substantial likelihood that the parties will incur unnecessary expenses litigating Yankee II in a manner that is inconsistent with the interpretation of the Standard Contract and the identification of the burden of proof that the Federal Circuit adopts in the SNF cases that are currently before it. Respect for the sanctity of the appeals process and for the scarcity of judicial resources compels the conclusion that Yankee II should be stayed until the Federal Circuit determines whether the Court applied the proper framework for measuring damages in Yankee I and the other SNF cases currently on appeal.

Second, because of the writ of mandamus issued by the District of Columbia Circuit, the Government has to date been denied the opportunity to assert a defense under the "Unavoidable Delays" clause, which, if deemed applicable, would on its face provide a complete defense to liability for NSP's claims. Requiring this case to proceed before the availability of this defense has been addressed by the Federal Circuit in NPPD would further deprive the Government of the opportunity to assert a right for which it bargained when the parties agreed to the Standard Contract.[1]

---

[1] Although we understand that, in Southern Nuclear Operating Co. v. United States, 77 Fed. Cl. 396, 459 (2007) (concluding that the defense has been waived), appeal pending, Nos. 2008-5020, -5028 (Fed. Cir. docketed Jan. 3, 2008), this Court concluded that the Government had waived the application of the "Unavoidable Delays" clause in that case, guidance from the Federal Circuit about the Government's ability to raise the issue at all may render further litigation of this issue moot in Yankee II.

3. The Requested Stay Is Of A Reasonable Duration

The final determination that the Court must make in deciding whether to grant a stay is whether the requested stay will be of a reasonable duration.

We do not presume to estimate the length of time that the stay we are seeking will last. However, granting a stay until resolution of the appeals is reasonable for much the same reason that granting a stay in this case is equitable. The purpose of the stay is to obtain guidance as to the proper resolution of the issues in every SNF case. It is in every party's interest for the cases that have already been developed and adjudicated to be reviewed by the Federal Circuit, thereby providing guidance and permitting a more efficient resolution of the other cases, including Yankee II. Therefore, waiting a relatively short period of time to receive that guidance based upon final resolution of the appeals of NPPD, Pacific Gas, Yankee I, and Sacramento Municipal is reasonable.

CONCLUSION

For these reasons, we respectfully request that the Court enter an order granting this motion to stay all proceedings in this matter until the Federal Circuit issues opinions resolving the appeals of Yankee I, Pacific Gas, Sacramento Municipal, and Nebraska Public Power. If the Court declines to issue a stay, we respectfully request that the Court enlarge the time to answer the complaint in this action to a date 14 days after the date of the order denying our motion.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
Tel. (202) 616-0478
Fax. (202) 307-2053

March 28, 2008

Attorneys for Defendant

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 28th day of March, 2008, a copy of "DEFENDANT'S MOTION FOR A STAY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner